**FURNITURE BARN, INC., Appellants,**

v.

**Benito LEAL et ux., Appellees.**

**No. 12657.**

Court of Civil Appeals of Texas, Austin.

Jan. 11, 1978.

Rehearing Denied Feb. 1, 1978.

Terrence Kendall, Kendall, Randle, Finch & Osborn, Austin, for appellants.

J. David Phillips, Juarez, Camacho & Phillips, Austin, for appellees.

SHANNON, Justice.

Appellees, Benito and Linda Leal, filed suit against appellant, Furniture Barn, Inc., in the county court at law of Travis County. Appellees sought treble damages for an alleged violation of Tex.Bus. & Comm.Code Ann. § 17.41, *et seq.*, (1973), commonly termed the Deceptive Trade Practices-Consumer Protection Act. After trial to the court, the court entered judgment for appellees for $555.00 treble damages and $1,000.00 for attorney's fees. We will reverse the judgment.

In their trial petition, appellees alleged that on May 12, 1975, appellant sold them furniture for $765.42. In connection with the sale, appellees signed a printed retail installment contract. Across the face of the printed contract appeared the words, "Layway *[sic] only* will pay 40.00 ea month until paid out." Appellees paid $175.00 to appellant as a down payment.

By July, 1975, appellees decided that they could not afford to pay out the furniture. In July, appellees called appellant's employee, Winkley, and requested him to refund the down payment. Winkley, instead, offered to reduce the monthly payment to ten dollars. Appellees accepted and paid one ten dollar installment, but appellant later refused appellees' second tender of ten dollars and instead, insisted that appellees make the regular forty dollar payment.

On October 7, 1975, Winkley wrote appellees as follows:

"Under the terms of our agreement on this account it will be necessary for you to pay $40.00 by Saturday, October 11, 1975.

"If payment is not received your account will be closed and all monies deposited shall be forfeited."

Appellees pleaded, among other things, that the quoted letter was a false and misleading statement by appellant in representing that the agreement conferred upon appellant or involved rights, remedies, or obligations which appellant did not have. Tex.Bus. & Comm.Code Ann. art. 17.-46(b)(12). Appellants, on the other hand, claim that appellees breached the agreement by failing to make the payments, and, as a result, appellant was entitled to retain the total sum paid as damages occasioned by the breach.

The case was submitted to the court upon an agreed statement of facts. Tex.R.Civ.P. 263. The only facts respecting the agreement included in the statement of facts, and not mentioned above, are that appellees were not to receive the furniture until the full price had been paid, and that at the time the layaway agreement was entered

into, there was no discussion by the parties of any "charges or costs" which appellant might deduct from appellees' payments.

Although the parties used a printed retail installment contract as a beginning point for their agreement, all of the blanks in the form were not completed. Moreover, it is clear that the parties intended to materially alter the terms of the form contract by the addition of the layaway agreement written across the form. It is a fair conclusion that the parties, at least on appeal, treat the layaway agreement, and not the installment contract, as the foundation for appellees' claim of a violation of § 17.46(b)(12).

To make a case that Winkley's letter was a "false or misleading statement" of appellant's rights under the layaway agreement, appellees necessarily had to prove up the terms of the layaway agreement. The agreed statement showed that appellees were not entitled to possession of the furniture until the final payment was made. The only other proof was that there was no discussion between the parties at the time of the agreement as to any "charges or costs" which appellant was entitled to subtract from appellees' payments.

Appellees' proof that the parties did not discuss appellant's entitlement to subtract "charges or costs" from appellees' payments, is not proof of what the agreement *did* provide in case of appellees' default. In the absence of proof of what the agreement provided in case of default, it cannot be said that Winkley's letter was "false or misleading" with respect to the rights and remedies provided by the agreement.

1. Appellant cites *Holland v. Brown,* 15 Utah 2d 422, 394 P.2d 77 (1964), wherein the "lay away" plan was described as an option to purchase. Appellant then reasons that where the buyer breaches the contract—fails to accept the offer—the buyer's liability is the loss of any consideration paid for the option. As we read the opinion, however, the court in *Holland* never addressed the question whether a total forfeiture of funds would lie for a breach of a "lay away" agreement much less sanction such a practice.

2. The damages claimed by appellant seem to vary throughout this lawsuit. In their First

The judgment is reversed, and judgment is here rendered that appellees take nothing.

PHILLIPS, Chief Justice, dissenting.

I respectfully dissent.

Section 17.46 of the Deceptive Trade Practices Act subdivision (a) proscribes "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce . . . ." Subdivision (b)(12) forbids "representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law." Appellees contend, in effect, that the mere use of the word "lay away" constitutes an oral agreement or implies the right to retain any amount of money deposited.[1] I cannot agree. Implicit in this contention would be appellant's right to forego any disclosure as to its possible cost in carrying out the "lay away" plan and would subject the buyer to the seller's subjective assessment of his possible damages which, in fact, could be whatever the traffic would bear.[2]

I would hold that the letter to appellees set out in the majority opinion declaring that the seller had the right to retain the down payment and partial installment payment was the declaration of a right that it did not have in that it had never disclosed its intention to appellees to proceed in this manner much less having entered into such a contract with appellees in case of default. In my judgment, the letter to appellees constituted a "false, misleading or deceptive act or practice" of the type that the legislature intended to proscribe and that appellees were "adversely affected" thereby.

Amended Original Answer, appellants pleaded that the cost of storage was $10 per month for six months or $60.00. In his letter of November 12, 1975 to Mr. Sanders, appellant's attorney stated that the cost of storage was $50.00 or five months at $10.00 per month, totaling $181.44, instead of the $191.44 appellant claimed in his pleadings. Then, in the stipulation of agreed facts, the parties stipulated that the damages incurred by appellant included a storage charge, a salesman's commission, and collection expenses. The charge for "accumulated depreciation on merchandise" previously claimed as damages, however, does not appear.

I would affirm the judgment of the trial court.